# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| COLONEL JENNIFER A. HISGEN )<br>U.S. ARMY )<br>1459A 5th Avenue )<br>Fort Knox, KY 40121, )<br>)<br>            Plaintiff, )<br>)<br>   v. )<br>)<br>HONORABLE JOHN MCHUGH )<br>Secretary of the Army )<br>(in his official capacity) )<br>101 Army Pentagon )<br>Washington, D.C. 20310-0101, )<br>)<br>         Defendant. ) | No.:_____ |

### COMPLAINT FOR JUDICAL REVIEW,
### DECLARATIVE AND INJUCTIVE RELIEF

For her Complaint against defendant, the Honorable John McHugh, Secretary of the Army (in his official capacity), Plaintiff alleges as follows:

#### Parties

1.  Plaintiff is an officer on active duty in the United States Army, who has served on active duty for 29 years.

2.  Defendant, the Secretary of the Army, is sued in his official capacity as Secretary of the Army on grounds that he, through his Board for Correction of Military Records ("ABCMR") acted arbitrarily, capriciously and contrary to law and regulation in denying plaintiff's request for correction of military records of and concerning Plaintiff.

**Jurisdiction**

3.   This action is one arising under the Constitution or the laws of the United States pursuant to 18 U.S.C. § 1331. Plaintiff seeks judicial review of the final approved agency decision of Defendant's ABCMR pursuant to the Administrative Procedure Act 5 U.S.C. § 702, and declaratory judgment and injunctive relief against Defendant setting aside the agency decision as arbitrary, capricious and contrary to law and regulation.

**Venue**

4.   Venue lies in this Court pursuant to 18 U.S.C. § 1391(e)(1)(A).

**Facts Relevant to All Counts**

5.   Plaintiff is an active duty judge advocate with over 29 years of commissioned service.

6.   Plaintiff's military record has been one of distinction and merit as is demonstrated by the fact that she has been promoted to the rank of Colonel (O-6).

7.   From 30 April 2012 until February 2013, Plaintiff served as the Command Inspector General ("CIG") for the U.S.

2

Army Reserve Command("USARC"), where her performance was rated as outstanding by her superior officer.

8.  USARC is a command comprising more than 200,000 personnel, including 10,000 full-time Soldiers and 3,000 Army civilian employees.

9.  As CIG, Plaintiff was a member of the USARC Commanding General's personal staff; she was directly responsible for leading, mentoring, and training a directorate of 27 Inspector General ("IG") personnel, and technical supervision for over 300 Army Reserve Inspectors General, who supported over 45 Major Subordinate Commands.

10.  To be assigned to this position required the approval from three Lieutenant Generals in the Army. The Commanding General of the United States Army Reserve, LTG Jack Stultz, nominated Plaintiff for this duty, and the Judge Advocate of the Army, LTG Dana Chipman, approved Plaintiff to serve in an out-of-Judge Advocate branch assignment.  The Inspector General of the Army, LTG Peter Vangjel, approved Plaintiff's appointment to serve as USARC IG.

11.  Plaintiff was charged, as an IG, with ensuring the rights of individuals and the interests of the Army Reserve were

3

protected as prescribed by law and regulation within the scope of governing Inspector General regulatory protocols.  A core responsibility as an IG included protecting "whistleblowers."

12.  On 19 February 2013, Plaintiff was removed from her appointment as USARC IG on the basis of a Department of the Army finding that Plaintiff committed a reprisal in violation of the Military Whistleblower Protection Act, 10 U.S.C. § 1034.

### Facts Related to the Alleged Reprisal

13.  As the USARC CIG, one of Plaintiff's many responsibilities was to review and make decisions on tour of duty extensions for the 300 IG personnel assigned throughout the Army Reserve Command.

14.  Only three months into Plaintiff's three-year tenure Plaintiff made a decision not to recommend approval of Lieutenant Colonel ("LTC") MF's request to serve a fifth year as an IG, a second extension of his normal tour length of 3 years.

15.  Pursuant to governing Army regulation, AR 20-1, ¶ 2-5c(2),the USARC CIG may approve an additional year for an IG assigned to USARC.  To serve a fifth year, the Inspector General of the Army ("TIG") approval is required, pursuant to AR 20-1, ¶ 2-5c(2).

4

16.   Pursuant to the Regulation, requests for a fifth year (that is, a second extension) require the USARC CIG's favorable support for approval before being forwarded to the TIG for final approval.

17.   If the USARC CIG does not support the extension, the request is effectively denied and should not be forwarded to DAIG consideration.   AR 20-1, ¶ 2c(2).

18.   Plaintiff's authority to recommend or not recommend an extension is discretionary, however the Regulation is silent on the criteria that should be applied to consider a request for tour of duty extension.

19.   In the absence of specific guidance on how discretion should be applied, Plaintiff applied a "Best-Interest-of-the-Army" criteria.

20.   LTC MF made his extension request on 13 February 2012, prior to Plaintiff's assumption of duties as CIG on 30 April 2012.

21.   Plaintiff initially recommended approval of the request on 10 June 2012.

22.   On 16 July 2012, Plaintiff became aware of issues reflecting poorly on LTC MF's abilities to serve as an IG, based upon credible reports from her senior enlisted leader, Sergeant Major ("SGM") VJ that LTC MF was perceived as employing "bullying" tactics by some key IG personnel, and receiving from SGM VJ an e-mail authored by LTC MF that demonstrated to Plaintiff that LTC MF lacked the objectivity the Army expects of its IGs.

23.   After the report from her senior enlisted leader and review of the e-mail, Plaintiff withdrew her recommendation for LTC MF's extension because, applying her "Best-Interests-of-the-Army" criteria, Plaintiff lost confidence in LTC MF's ability to be perceived as fair and impartial.

### Content of the Email

24.   The e-mail that was of concern to Plaintiff was authored by LTC MF to Colonel ("COL") JS on 6 June 2012.  Both were staff officers at the 79th Sustainment Support Command ("79th SSC").  COL JS was the chief legal officer (the "Staff Judge Advocate") and LTC MF was a military policeman detailed as the IG to that command.  Neither officer was in the rating chain of the other.

6

25.   The email was requested by COL JS to officially document LTC MF's complaints of alleged mishandling of legal matters by Captain ("CPT") TC, assigned to 311th Expeditionary Support Command ("311th ESC"), a command subordinate to the 79th SSC.

26.   Pursuant to AR 20-1 ¶ 7-1i(4), an IG is required to refer all allegations involving professional misconduct by an Army lawyer (military or civilian) through TIG's legal advisor to the senior counsel having jurisdiction over the subject lawyer for disposition.  LTC MF did not follow this mandatory procedure and instead submitted his complaint to the SJA on his own staff.

27.   Plaintiff was provided the e-mail by SGM VJ after SGM VJ's return from a visit to the 311th ESC, and later was provided the same e-mail by CPT TC when he submitted a separate IG complaint against LTC MF to Plaintiff's office on 26 July 2012.

28.   During SGM VJ's visit to the 311th ESC, she reported observing significant friction between the 311th ESC and its higher headquarters, the 79th SSC.

7

29.   CPT TC reported to SGM VJ that LTC MF's inaccurate statements about CPT TC had caused CPT TC's credentials as an attorney to be questioned.

30.   The Email prepared by LTC MF made five vague allegations against CPT TC:

> (a)   CPT TC did not appreciate the type of evidence necessary, or the level of proof required, to justify an administrative separation or imposition of nonjudicial punishment against a sergeant accused of committing adultery.
>
> (b)   A legal review of an IG investigative report was sloppy and incorrectly claimed that some allegations did not require investigation.
>
> (c)   CPT TC did not pay enough attention to detail in reviewing a report pertaining to an Equal Opportunity case.  (LTC MF did not list specific failures, but concluded generally that the report sent to the decision maker for signature was incomplete).
>
> (d)   CPT TC was late in reviewing and redacting documents sought pursuant to the Freedom of Information Act.
>
> (e)   CPT TC's demeanor was unprofessional based on one e-mail, and because he withdrew from a conference call without his higher headquarters' permission.

31.  As a result of LTC MF's e-mail, a professional responsibility inquiry was initiated, which ultimately cleared CPT TC of any professional responsibility violations.

32.   Plaintiff expressed concern about the tone of the e-mail, the air of superiority it expressed, and over-confident expression regarding LTC MF's claimed knowledge of military law, and decided that she should reconsider the wisdom of her earlier support for a second extension to allow LTC MF to serve as an IG for a fifth consecutive year.

33.   Plaintiff concluded, as a matter of her discretion, that LTC MF's actions imperiled the ability of the 79th SSC IG office to be viewed as fair and impartial.

34.   At the time plaintiff received and reviewed LTC MF's e-mail, plaintiff had only been serving as CIG for approximately three months.

35.   Plaintiff consulted with her technical supervisor, COL RJ, the FORSCOM CIG, and showed him a copy of the e-mail.  After reviewing the e-mail, COL RJ stated he concurred and would not have supported a fifth-year extension for LTC MF.

36.   After consulting COL RJ and considering the totality of the circumstances, Plaintiff withdrew her support for the extension of tour of duty length for LTC MF because Plaintiff believed it was in the best interests of the Army that LTC MF return to service in his basic branch, Military Police.

9

## "Whistleblower" Complaint

37.   In response to this decision, LTC MF filed a Military Whistleblower Protection Act complaint of reprisal against Plaintiff.

38.   Plaintiff cooperated fully in the investigation. Department of the Army IG substantiated the Whistleblower reprisal complaint, however, in doing so they also denied Plaintiff the opportunity to review the actual allegation against her, be provided a list of witnesses interviewed, access to any documents compiled during the investigation, including a copy of Plaintiff's own sworn testimony.

39.   According to the DAIG letter provided to Plaintiff, the DAIG concluded that plaintiff disapproved LTC MF's extension request because LTC MF questioned an attorney. The DAIG redacted report states:

> From direct testimony and her actions, COL Hisgen's
> motive was loyalty to her branch, 27A.

40.   Plaintiff appealed DAIG's finding to the Department of Defense IG ("DOD IG").  By letter dated 26 March 2013, the DOD IG denied Plaintiff's appeal.

**ABCMR Application for Correction of Military Record**

41.   On 10 June 2013, Plaintiff applied to the Army Board for Correction of Military Records in accordance with 10 U.S.C. § 1552.

42.   In her Application, Petitioner requested that Army records be corrected to remove any document reflecting a violation of the Military Whistleblower Protection Act ("MWPA") by Plaintiff.

43.   Plaintiff alleged that the DAIG incorrectly applied the law governing Whistleblower reprisal allegations when it concluded that LTC MF's e-mail was a protected communication because it was made in the ordinary course of LTC MF's duties; that it was not made to a person or organization in the chain of command or other person designated by regulation to receive a protected communication; and that it did not allege gross misconduct or a violation of law or regulation, as is required under the MWPA.

44.   On or about 3 July 2013, Plaintiff supplemented the ABCMR Application with a copy of her most recent performance evaluation covering the period 2 April 2012 through 1 April

11

2013, the period during which it was alleged she acted in reprisal against LTC MF.

45.   The Officer Evaluation Report indicated that Plaintiff demonstrated "Outstanding Performance, Must Promote" and that she was among the "Best Qualified" of the officers rated by the Senior Rater, a Lieutenant General.

46.   In addition, in her supplement to the Application, Plaintiff included a letter dismissing allegations of lawyer professional misconduct against Plaintiff based on her action with respect to LTC MF and showing that her professional responsibility case had been closed without any adverse action.

47.   In support of her Application, Plaintiff provided references to court cases decided under the federal civilian Whistleblower Protection Act, 5 U.S.C. § 2302, that interpreted the analogous federal statute.

48.   The ABCMR dismissed Plaintiff's citation to relevant federal case law, concluding:

> The Applicant argues the DAIG improperly interpreted the term "Protected Communication" with regard to an e-mail communication that was sent by an IG critiquing the performance of a junior officer.  She contends the communication did not rise to the level of a protected communication as defined under the definition in DoD Directive 7050.06.  However, much of her supporting argument is based on court cases addressing civilian

employees under the WPA statute under Title 5, U.S. Code, section 2302.  This is not the controlling law in this case.

49.  The Board continued:

In this case the DAIG found that the applicant had violated the MWPA by taking back her earlier approval of an extension and deployment based on the e-mail the complainant had written.  This was a clear act of reprisal.

The applicant appealed the DAIG finding; however, it was denied.  The denial letter broadly interpreted the definitions of the DODI and did not accept the applicant's narrower interpretation of the relevant definitions.  She provides insufficient evidence to show the findings were legally deficient.

## COUNT I.

## (Abandonment of Board Duty to Independently Decide Application)

50.  Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

51.  Defendant, acting through the ABCMR, acted arbitrarily, capriciously and contrary to law and regulation, by failing to conduct an independent analysis of Plaintiff's allegations of legal error, relying instead, and simply parroting, the DAIG findings that Plaintiff challenged in her Application.  The Board's decision is devoid of independent analysis of Plaintiff's specific claims, her citation of legal authority, or indication that it complied with its regulatory duty to itself determine whether there existed legal error or injustice, reporting and repeating instead the DAIG's findings.

13

## COUNT II.

### (Failure to Acknowledge and Decide Allegation of Error)

52.  Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

53. The Board failed to address, much less decide, Plaintiff's allegation of legal error that the LTC MF e-mail failed to comply with the provisions of AR 20-1, ¶ 7-1i(4), requiring that an IG refer all allegations of Judge Advocate misconduct through DAIG's legal advisor to the senior counsel having jurisdiction over the subject Judge Advocate, who pursuant to regulation would be an official designated by regulation to receive such complaints.

## COUNT III.

### (Arbitrary and Capricious Application of Governing Law and Regulation)

54.  Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

55.  Defendant, acting through the ABCMR, acted arbitrarily and capriciously and contrary to law and regulation in upholding DAIG's finding that LTC MF's allegation of professional misconduct addressed to a peer on the same staff as LTC MF constituted a "protected communication" pursuant to 10 U.S.C. § 1034 and DoD Directive 7050.06 dated July 23, 2007 where

14

Plaintiff presented a preponderance of the evidence that the DAIG misapplied and misinterpreted clear statutory and regulatory language in defining a "protected communication."

### Prayer for Relief

WHEREFORE, Plaintiff requests that this Court enter judgment for Plaintiff against Defendant and order the following additional relief:

1) Enter a Declaratory Judgment against Defendant that the ABCMR acted arbitrarily, capriciously and contrary to law by failing to apply the plain meaning of the statute and regulation governing "Protected Communications" under the MWPA.

2) Enter an Order compelling Defendant forthwith to correct any Army records reflecting that Plaintiff violated the provisions of the MWPA;

3) Order defendant to pay plaintiff's legal fees and expenses as the prevailing party pursuant to the Equal Access to Justice Act;

4) Order the continued jurisdiction of this Court until Defendant has complied with the orders of the Court and reports to the Court compliance with same;

5) Order such other relief as the court may deem warranted on the record.

Respectfully submitted,

/s/ Charles W. Gittins

Charles W. Gittins
(DC Bar # 429710)

P.O. Box 144
Middletown, VA 22645
(540) 327-2208
(866) 722-2798(fax)
e-mail:  cgittins@aol.com

*Counsel for Colonel Hisgen*