UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                              )
COLONEL JENNIFER A. HISGEN                )
                                                              )
          **Plaintiff,**                             )
                                                              )
          **v.**                                    )       **Civil Action No. 14-1204 (RMC)**
                                                              )
ERIC K. FANNING,                               )
   **Acting Secretary of the Army,**         )
                                                              )
          **Defendant.**                          )
_____ )

## OPINION

Colonel (Ret.) Jennifer A. Hisgen, U.S. Army, sues Erik K. Fanning, Acting Secretary of the Army, in his official capacity. Col. Hisgen served with distinction for 30 years, mostly in the Judge Advocate General Corps. She has brought suit to overturn a decision of the Army Board for Correction of Military Records (Board) confirming that she violated the Military Whistleblower Protection Act by reprising against a service member who made a protected communication. Col. Hisgen disagrees with the decision and alleges that the Board violated the standards set forth in the Administrative Procedure Act (APA), 5 U.S.C. § 706(2). The parties have cross-moved for summary judgment. For the reasons that follow, the Court will grant Secretary Fanning's Motion for Summary Judgment and deny Col. Hisgen's Cross Motion for Summary Judgment.

## I.  BACKGROUND

Col. Hisgen spent most of her Army career on active duty as a commissioned officer in the U.S. Army Reserve Active Guard Reserve program, specifically in the Judge

Advocate General Corps.  *See* Admin Record [Dkt. 19] at AR 016.[1]  In 2012, Col. Hisgen was selected to serve as the Command Inspector General for the U.S. Army Reserve Command, which is a non-Judge Advocate position.  *See* AR 066, 096, 097.  An Inspector General (IG) is tasked with protecting the rights of individuals, as well as the interests of the Army, in accordance with applicable laws and regulations.  AR 103.  Her performance as Command IG was rated as outstanding by her superior officer.  AR 102, 242-43.

Army Reserve Command consists of over 200,000 personnel, including 10,000 full-time Soldiers and 3,000 Army civilian employees.  *Id.*  As Command IG, Col. Hisgen was a member of the personal staff of the Commanding General.  She was responsible for leading, mentoring, and training a directorate of 27 IGs and for the technical supervision of more than 300 Army Reserve IGs supporting over 45 Major Subordinate Commands.  AR 102.  Col. Hisgen served as Command IG from April 30, 2012 to February 19, 2013.  AR 048-49, 247.  She did not receive any adverse markings on her performance evaluation.  AR 099-100.

As Command IG, Col. Hisgen was responsible for reviewing and making recommendations on whether to extend tours of duty for the 300 IGs in the Army Reserve Command.  AR 005, 102-03.  Normally a three-year appointment, an IG can request a fourth, and even a fifth, year extension.  *Id.*  While the Command IG is solely responsible for approving fourth-year extension requests, the Command IG must forward all fifth-year extension requests that he or she supports to the Department of the Army Inspector General (Army IG), Operations and Support Division for final approval by The Inspector General (TIG).  *Id.*  In other words, the

---

[1] Citations to the Administrative Record are annotated as "AR XXX." Although the Record is numbered to six digits, the first three digits are omitted for the convenience of the reader.

Command IG has denial authority over such extension requests because he or she only forwards those with a favorable recommendation.

A few weeks into her new position as Command IG, on June 10, 2012, Col. Hisgen forwarded her favorable recommendation of Lieutenant Colonel (LTC) MF's fifth-year extension request to the Army IG for final approval. She noted that "LTC [MF's] performance with the 79th [(Sustainment Support Command)] SSC was remarkable" and that "[a]pproval of a 5th Year Extension will allow [Central Command] to retain a highly skilled IG who will greatly contribute to mission success by providing quality IG support and leadership in a deployed environment." AR 137.

The 79th SSC, to which LTC MF was assigned, has authority over several units, including the 311th Expeditionary Sustainment Command (ESC). AR 029, 043. As a result, LTC MF would often interact as part of his normal duties with Judge Advocates in the 311th ESC, such as Captain (CPT) TC. AR 018. LTC MF communicated his concerns about CPT TC's performance and work as a Judge Advocate to Colonel (COL) JS, who was assigned to the 79th SSC. AR 017-18, 141. COL JS was also the chief legal officer, known as the Staff Judge Advocate, for the 311th SSC. COL JS requested that LTC MF provide his concerns in writing. *Id.*

On June 6, 2016, LTC MF sent an e-mail to COL JS describing his concerns and complaints about CPT TC's alleged mishandling of legal matters. The e-mail contained five allegations:

(1) CPT TC provided incorrect legal advice concerning the standard of proof required in an administrative separation or non-judicial punishment case against a sergeant accused of committing adultery;

(2) CPT TC provided incorrect legal advice concerning what claims had to be investigated and failed to identify various deficiencies (*i.e.*, unsigned sworn statements and unsupported conclusions without proper fact finding) in his legal review of the investigations;

(3) CPT TC failed to pay enough attention to detail in his legal review of an Equal Opportunity investigation report and allowed an incomplete report to go forward to the decision maker for signature;

(4) CPT TC was "very late" in reviewing, redacting, and providing documents to Army Reserve Command in response to a Freedom of Information Act (FOIA) request; and

(5) CPT TC lacks professionalism based on the fact that he withdrew without permission from a conference call with senior officers and his higher command (*i.e.*, 79th SCC).

AR 131-32. Upon receipt of the e-mail, COL JS contacted the Office of The Judge Advocate General and Army Reserve Command's Staff Judge Advocate to examine the allegations. AR 145. They determined that sufficient evidence existed to initiate a preliminary screening inquiry into CPT TC. *Id.* On June 21, 2012, COL JS authorized the inquiry; once completed, it determined that CPT TC did not commit any professional responsibility violations. AR 117, 119-20.

On July 16-17, 2012, Sergeant Major (SGM) VJ, an Assistant IG assigned to the Army Reserve Command, visited the 311th ESC and learned about tension between the IG offices of the 311th ESC and the 79th SSC. AR 108-09. SGM VJ reported his findings to Col. Hisgen and gave her a hard copy of LTC MF's e-mail concerning CPT TC's performance. AR 016, 138, 143, 146. On July 25, 2012, Col. Hisgen received another copy of the e-mail when CPT TC submitted an IG complaint against LTC MF. AR 006-7, 013, 104, 193. On August 1,

4

2012, Col. Hisgen signed a memorandum disapproving LTC MF's fifth-year extension.  AR 019, 139.

The following day, on August 2, 2012, Col. Hisgen contacted COL RJ, her technical supervisor and Command IG of the Forces Command, to ask for his opinion about LTC MF's extension request.  AR 143, 153.  Col. Hisgen showed COL RJ a copy of the e-mail, as well as the appointment memorandum for CPT TC's preliminary screening inquiry, to which COL RJ replied that he concurred with Col. Hisgen that LTC MF's request should be denied.  AR 006, 104, 143.  Col. Hisgen proceeded to contact LTC MF to inform him that she denied his extension request and that he should return to service in his basic branch, Military Police.  AR 105, 139.

On September 5, 2012, LTC MF filed a complaint against Col. Hisgen alleging a violation of Department of Defense (DoD) Directive 7050.06, which provides implementation instructions for the Military Whistleblower Protection Act (MWPA), 10 U.S.C. § 1034.  Specifically, LTC MF alleged that Col. Hisgen retaliated against him by taking an unfavorable personnel action on the basis of a protected communication.  AR 136, 144.  On October 25, 2012, the Army IG initiated an investigation of the complaint from which the investigator concluded that Col. Hisgen "recommended approval of the personnel action, received the protected communication, and then reversed her decision regarding [LTC MF'S] personnel action."  AR 152.  The investigator's report was forwarded to DoD-IG for final approval.  The report was approved and Col. Hisgen was so informed in a memorandum dated February 13, 2013.  AR 024.

Col. Hisgen appealed the Army IG's findings and, on March 26, 2013, DoD-IG denied her appeal because "she had not provided any new or compelling information or evidence to warrant overturning" the findings. *Id.* In response, Col. Hisgen then applied to the Army Board for Correction of Military Records (ABCMR) in accordance with 10 U.S.C. § 1552 and 32 C.F.R. § 581.3 to correct the finding of reprisal and remove any document reflecting a violation of the MWPA. AR 230. The ABCMR is authorized to "consider applications . . . for the purpose of determining the existence of error or injustice in the army records of current and former members of the Army, to make recommendations to the Secretary [of the Army] or take corrective action on the Secretary's behalf when authorized." 32 C.F.R. § 581.3. Specifically, Col. Hisgen argued before ABCMR that the Army IG had incorrectly concluded that LTC MF's e-mail was a protected communication for purposes of the MWPA. AR 205-07. On October 22, 2013, ABCMR denied Col. Hisgen's application. AR 215-29.

On July 17, 2014, Col. Hisgen filed the instant action seeking judicial review of the ABCMR Decision pursuant to the APA. *See* Compl. [Dkt. 1]. Defendant was unable to provide a certified copy of the administrative record so that, on December 18, 2014, the Court granted a motion for voluntary remand. On remand, a new panel of ABCMR reviewed Col. Hisgen's case and denied her supplemented Application for Correction of her military record on June 6, 2015. AR 003-46. ABCMR specifically noted that "there is no evidence of any derogatory information related to this investigation or any IG investigation in her OMPF [(official military personnel file)]." AR 046. Since there was no evidence that the Army IG's investigation report was unjust or untrue, ABCMR concluded that there was no legal basis to order the removal of records from the Army IG's database. AR 045.

Col. Hisgen filed an Amended Complaint in this Court on August 7, 2015, alleging that ABCMR's denial of her supplemented Application for Correction was arbitrary, capricious, an abuse of discretion, or otherwise contrary to law and regulations in violation of the APA. *See* Am. Compl. [Dkt. 10]. The parties cross-moved for summary judgment and the merits are fully briefed and ripe for resolution. *See* Def. Mot. for Summ. J. [Dkt. 12] (Def. Mot.); Pl. Opp'n & Cross-Mot. for Summ. J. [Dkts. 14 & 16] (Pl. Mot.); Def. Opp'n & Reply [Dkt. 15] (Def. Opp'n); Pl. Reply [Dkt. 18].

## II. LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "In a case involving review of a final agency action under the Administrative Procedure Act, however, the standard set forth in Rule 56[ ] does not apply because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 89 (D.D.C. 2006) (internal citation omitted); *see also Charter Operators of Alaska v. Blank*, 844 F. Supp. 2d 122, 126-27 (D.D.C. 2012). Under the APA, the agency's role is to resolve factual issues to reach a decision supported by the administrative record, while "'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Sierra Club*, 459 F. Supp. 2d at 90 (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769-70 (9th Cir. 1985)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record

and otherwise consistent with the APA standard of review." *Id.* (citing *Richards v. INS*, 554 F.2d 1173, 1177 & n. 28 (D.C. Cir. 1977)).

Under the APA, a reviewing court can set aside an agency action if the action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). A reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks and citation omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986) (internal quotation marks and citation omitted); *see also Pub. Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result."). The Court "will uphold a decision of less than ideal clarity if the agency's path may be reasonably discerned." *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (citation omitted).

An agency action usually is arbitrary or capricious if:

the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the

agency." *Id*. Rather, agency action is normally "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

With respect to military correction board decisions, Congress authorized the Secretary of the Army to act through a civilian board whenever it is "necessary to correct an error or remove an injustice" from an Army record. 10 U.S.C. § 1552(a)(1); *see also* 32 C.F.R. § 581.3. Judicial review of such decisions is subject to an "'unusually deferential application of the arbitrary or capricious standard' of the APA." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). This standard of review "ensure[s] that the courts do not become a forum for appeals by every soldier dissatisfied with [a military personnel decision], a result that would destabilize military command and take the judiciary far afield of its area of competence." *Escobedo v. Green*, 602 F. Supp. 2d 244, 248-49 (D.D.C. 2009) (quoting *Cone*, 223 F.3d at 793). Only egregious agency decisions do not satisfy this deferential standard of review. *Kreis*, 866 F.2d at 1515.

## III.   ANALYSIS

Col. Hisgen disagrees with ABCMR's finding of reprisal. Four elements must be established to find reprisal: (1) a protected communication; (2) an unfavorable or adverse personnel action against the complainant; (3) the deciding official's knowledge of the complainant's protected communication; and (4) the personnel action would not have been taken absent the protected communication. AR 044 (citing Def. Mot., Ex. 1 [Dkt. 12-2] (DoD Directive 7050.06)). Col. Hisgen disputes only the first and fourth elements. Specifically, she argues that ABCMR's Decision was arbitrary and capricious because: (1) LTC MF's e-mail was

9

not a protected communication for purposes of the MWPA; (2) LTC MF's extension request was not denied because of his e-mail; and (3) ABCMR did not review all the evidence and failed to reach an independent decision. Defendant opposes and contends that ABCMR's decision was reasonable and supported by substantial evidence in the record.

### A. The E-mail as a Protected Communication

It is DoD policy that "[m]embers of the Armed Forces shall be free to make a protected communication." DoD Directive 7050.06 at A-2. Any unfavorable personnel action taken against a complainant on the basis of a protected communication constitutes reprisal under MWPA and DoD Directive 7050.06. A protected communication is a:

> communication in which a member of the Armed Forces communicates information that a member reasonably believes evidences a violation of law or regulation . . . when such communication is made to any of the following: . . . [a]ny person or organization in the chain of command; or any other person designated pursuant to regulations or other established administrative procedures to receive such complaint.

*Id.* at A-12; *see also* AR 042. In other words, a protected communication must satisfy three key elements: (1) the complainant is a member of the Armed Forces, (2) who reasonably believes that he or she is reporting a possible violation of law or regulation, and (3) communicates the information to someone in the chain of command. Col. Hisgen focuses on the last two elements and contends that ABCMR erroneously concluded that LTC MF's e-mail was a protected communication because: (1) LTC MF did not complain about criminal or illegal conduct; and (2) COL JS, the recipient of the e-mail, was not in LTC MF's chain of command or in his supervisory or rating chain. These arguments do not demonstrate that ABCMR acted arbitrarily and capriciously.

### 1.   "A Violation of Law or Regulation": The E-mail's Content

Col. Hisgen argues that the e-mail does not fall within the ambit of the MWPA because it did not report a criminal or illegal act. This argument misinterprets the law. The DoD Directive and the MWPA do not contain the term "criminal." By referring to a "violation of law or regulation," Congress and DoD intended a much broader scope of protection for communications. 10 U.S.C. § 1034(c)(2)(A); DoD Directive 7050.06 at A-12. The MWPA's purpose is "to provide a degree of protection to military personnel who report information on *improper* or illegal activities by other military personnel." *Hernandez v. United States*, 38 Fed. Cl. 532, 535 (1997) (emphasis added). Improper conduct that contravenes a DoD Directive or Army regulation need not be criminal in nature to violate the Uniform Code of Military Justice (UCMJ). *See United States v. Green*, 58 M.J. 855, 859 (A. Ct. Crim. App. 2003) (affirming "a finding of guilty of dereliction of duty"); *United States v. Shavrnoch*, 49 M.J. 334, 336 (C.A.A.F. 1998) (holding that "[a] non-punitive regulation . . . may be considered in the context of establishing a standard of military conduct with respect to the less serious offense of dereliction of duty") (citation omitted).[2] Consequently, Col. Hisgen's exclusive focus on criminal conduct is at odds with the statutory language and purpose of both DoD Directive 7050.06 and the MWPA.

---

[2] "In a dereliction case, the Government must prove that the accused knew or reasonably should have known of the applicable duty and that actions inconsistent with the duty were either willful, the result of neglect, or the product of culpable inefficiency." *Shavrnoch,* 49 M.J. at 337 (citation omitted). Negligent dereliction of duty constitutes a violation of Article 92 ("Failure to Obey Order or Regulation") of the UCMJ.

ABCMR assessed all five allegations in LTC MF's e-mail and concluded that they reasonably "alleged a violation of law or regulation." AR 042-43. With respect to the first three alleged incidents of incorrect legal advice, "sloppy legal review," and "negligent attention to detail," ABCMR found that CPT TC's alleged conduct reflected a "lack of competence to perform legal duties" and "failure to use due care" in violation of Army Regulation 27-26, paragraph 1.1 of the Rules for Professional Conduct for Lawyers. *Id*.[3] ABCMR also noted that CPT TC's alleged conduct rose to the level of "negligent dereliction of duty." AR 043. With respect to the fourth allegation concerning CPT TC's failure to properly review and redact documents in response to a FOIA request, ABCMR found that it described a "violation of law" (*i.e.*, processing requirements under FOIA, 5 U.S.C. § 552), as well as a "potential willful dereliction of duty in performing the tasks mandated by statute in a timely fashion." *Id*. Finally, ABCMR concluded that the fifth allegation concerning CPT TC's withdrawal from a conference call without his superiors' permission "demonstrates a possible willful dereliction of duty in failing to attend a required meeting." *Id*.

Col. Hisgen does not address these findings and instead focuses exclusively on her argument that DoD Directive 7050.06 and MWPA only cover criminal conduct. Because her argument is incorrect as a matter of law, it follows that Col. Hisgen has failed to argue, let alone show, that LTC MF's e-mail did not reasonably allege "improper" conduct or a potential violation of law or regulation (*i.e.*, FOIA, Army Regulation 27-26, and negligent dereliction of duty under UCMJ Article 92).

---

[3] The Regulation requires a lawyer to provide "competent representation to a client," which "requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation of the client." AR 042.

Col. Hisgen also focuses on several facts that are not germane to whether the e-mail constituted a protected communication. Col. Hisgen argues that the e-mail lost its protected status because it was made in the course of LTC MF's normal duties and was "solicited by LTC MF's fellow staff officer, to document performance concerns about [CPT TC], not to report criminal violations of law or regulation." Pl. Mot. at 13. Col. Hisgen also questions LTC MF's motives and contends that "the timing of the complaint of whistleblower retaliation only arose as a tactical ploy by LTC MF when he learned that his unusual fifth year extension in the IG would not be approved." *Id.* These extraneous facts are not relevant in a reprisal analysis under the MWPA. MWPA makes clear that a "communication . . . shall not be excluded from the protections" of the statute because "of the member's motive for making the communication" or because "the communication was made during the normal course of duties of the member." 10 U.S.C. § 1034(c)(3).

LTC MF's supposed ulterior motive, as well as the fact that COL JS requested LTC MF to provide his concerns about CPT TC in writing (after he had already made the complaints to COL JS verbally), do not affect ABCMR's reasoning and findings. Neither does the fact that CPT TC was investigated and no violations were found. An actual violation is not a necessary precondition for a finding of reprisal because the communication needed only *reasonably* to allege a possible violation of law or regulation. *See* DoD Directive 7050.06 (noting that the member need only "reasonably believe[]" that the information being communicated "evidences a violation of law or regulation"); *see also* 10 U.S.C. § 1034(c)(2). "So long as [the complainant's] belief is reasonable, the complainant need not be right about the underlying allegation." Def. Mot., Ex. 2 [Dkt. 12-2] (DoD Whistleblower Guide) at A-21.

13

Similarly, Col. Higen's argument that COL RJ, her technical supervisor, did not recognize the e-mail as a protected communication, even if relevant, does not carry enough weight to render the Army IG's contrary findings and ABCMR's determination unreasonable.

ABCMR's conclusion that LTC MF's e-mail communicated, or was perceived as communicating, information reasonably believed to constitute evidence of a violation of law or regulation was both reasonable and supported by substantial evidence.

### 2.  Communication to "Any Person or Organization in the Chain of Command"

A communication is protected if it is made to "[a]ny person or organization in chain of command; or any other person designated pursuant to regulations or other established administrative procedures to receive such complaint."  DoD Directive 7050.06 at A-12; *see also* AR 042.  The controlling Directive and its accompanying IG Guide defined chain of command as "the succession of commanding officers from a superior to a subordinate through which command is exercised," and "the succession of officers, enlisted members or civilians through whom administrative control is exercised, including supervision and rating performance."  DoD Directive 7050.06 at A-11.  Col. Higen argues that LTC MF was required to make a report to a superior officer or someone "within [his] supervision or performance rating chain."  Pl. Mot. at 15.  COL JS, although superior in rank to LTC MF, was a fellow staff officer at the 79th SSC, and, like LTC MF, reported directly to the Commander.  As a result, Col. Higen concludes that COL JS was not in LTC MF's chain of command.

ABCMR did not interpret DoD Directive 7050.06 to require the complainant (LTC MF) to make the communication to someone in *his* chain of command.  To be clear, the directive requires the communication to be made to someone in the chain of command.  This

14

language, however, can be construed to mean someone in the complainant's chain of command or in the chain of command of the subject of the complaint, that is, someone in LTC MF or in CPT TC's chain of command. Col. Hisgen points to the DoD IG Guide to Investigating Military Whistleblower Reprisal and Restriction Complaints to support her interpretation of chain of command. That Guide states that "Officials authorized to receive [protected communications] *include*: any person or organization in the complainant's chain of command." DoD Whistleblower Guide at A-21 (emphasis added). However, the Guide was published on June 29, 2015, which is more than three years after LTC MF sent an e-mail to COL JS and after Col. Hisgen denied LTC MF's fifth-year extension. Therefore, the Guide was not in effect during the relevant time. Moreover, the Guide does not provide an exhaustive list of those authorized to receive protected communications. By using the word "include," the Guide cannot be read to be restrictive; rather, it offered an example of an authorized recipient. *Id.* It does not follow from this statement that ABCMR was arbitrary and capricious in accepting that someone in CPT TC's chain of command was authorized to receive the communication.

In any event, unlike the June 2015 Guide, the controlling IG Reprisal Guide at the relevant time did not impose this supposed limitation on "chain of command." Def. Mot., Ex. 3 [Dkt. 12-2] (IG Reprisal Guide) at A-27-A-37. Nor does MWPA or DoD Directive 7050.06, including the most current version updated on April 17, 2015, impose such a limitation. The Court cannot say that ABCMR's interpretation of DoD Directive 7050.06 was unreasonable or incorrect as a matter of law. In fact, this interpretation is consistent with the statute and intent of MWPA to protect against unfavorable personnel actions and ensure that members of the Armed Forces are free to make protected communications. *See* 10 U.S.C. § 1034(b)(1); DoD Directive

7050.06 at A-2.  Moreover, it is perfectly reasonable to conclude that Congress and DoD

intended to protect those reporting a possible violation of law or regulation to someone in the

chain of command, or supervisor, of the person allegedly committing the violation.  Since the

statutory language does not impose the limitation advanced by Col. Hisgen, it follows that she

has failed to show that ABCMR's decision was arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law.

   It is clear from the record that COL JS, as the Staff Judge Advocate for the 79th

SSC, was someone in CPT TC's chain of command because he had supervisory authority over

CPT TC and those in the 311th ESC, which was a subordinate command.  COL JS was

"responsible for[, among other things,] planning and resourcing legal support as well as

conducting training, assignments, and professional development of JAGC [Judge Advocate

General Corps] personnel assigned to the command and its *subordinate units*."  Def. Opp'n, Ex.

3 [Dkt. 15-1] (Field Manual 1-04) at A-14 (emphasis added).  He was also "the field

representative of The Judge Advocate General," *id.*, and responsible for the "[t]echnical

supervision of JAGC officers, Active and Reserve, civilian attorneys, legal technicians, and

enlisted legal specialists located in the headquarters or assigned to subordinate commanders,"

Def. Opp'n, Ex. 1 [Dkt. 15-1] (Army Regulation 27-1) at A-14.[4]  Therefore, COL JS was in CPT

TC's chain of command for purposes of MWPA and the DoD Directive.  Col. Hisgen's

reasonable disagreement with ABCMR's decision is not sufficient reason to reverse it under the

_____

[4] Defendant argues in passing that COL JS's duties included the supervision of JAGC personnel within 79th SSC and, thus, he was in LTC MF's supervisory chain.  The Court will not address this argument because it finds that neither MWPA nor DoD Directive 7050.06 requires the recipient of the communication to be in the complainant's chain of command.

APA, particularly in this area of military correction board decisions. *See Escobedo*, 602 F. Supp. 2d at 248-49; *see also Coburn v. McHugh*, 77 F. Supp. 3d 24, 31 (D.D.C. 2014) (stating that a "plaintiff's disagreement with [an] ABCMR decision is not a valid basis for a [c]ourt to set aside an agency action supported by the record").

      Finally, under Army Regulation 20-1, LTC MF was required to report his allegation of professional misconduct to the legal advisor to the Army IG, so that the legal advisor could forward the complaint to "the senior counsel having jurisdiction over the subject lawyer." Def. Mot., Ex. 5 [Dkt. 12-2] (Army Reg. 20-1) at A-51. ABCMR acknowledged that LTC MF failed to comply with this regulation because he reported the allegations directly to COL JS and not the legal advisor to the Army IG. However, as ABCMR concluded, this procedural failure "does not change the nature of the protected communication." AR 044. Col. Hisgen cites no legal support for the proposition that a whistleblower communication loses its protected status because it was processed incorrectly. To the contrary, DoD Directive 7050.06 states that a communication is protected if it is made to "[a]ny person or organization in chain of command; *or* any other person designated pursuant to regulations or other established administrative procedures to receive such complaint." DoD Directive 7050.06 at A-12 (emphasis added). Even if COL JS were not "designated pursuant to regulations . . . to receive [the] complaint," he was in CPT TC's chain of command, and, thus, authorized to receive LTC MF's protected communication. *Id*.

      Accordingly, ABCMR's conclusion that LTC MF's e-mail was a protected communication was reasonable and supported by substantial evidence.

### B.  The Denial of LTC MF's Extension Because of the E-mail

          ABCMR found that Col. Hisgen would not have taken the unfavorable personnel action (*i.e.*, the denial of LTC MF's fifth-year extension request) absent his protected communication (*i.e.*, the e-mail to COL JS). This conclusion regarding the fourth element of a reprisal claim was both reasonable and supported by substantial evidence. When Col. Hisgen contacted LTC MF to inform him of her decision to deny his extension request, she stated "I've had it [(*i.e.*, the e-mail)] on my desk have been looking at it every day and I've been trying to figure out how to deal with you." AR 139. She also told LTC MF, "You were out of line — what were you thinking?  Initiating an inquiry into a JAG officer is a serious thing. Do you realize what you did?"  *Id.*  She told the Army IG investigator that "her reason for disapproval was because [LTC MF] sent an email to the 79th SSC SJA [(Staff Judge Advocate)]." AR 150. Other similar statements include that "she disapproved the extension request because [LTC MF] questioned the legal opinion of an attorney" and that she "was 'sensitive' to the email because of her military background as a 27A, Judge Advocate." AR 153. This evidence alone was sufficient to conclude reasonably that the protected communication was key to her decision to deny LTC MF's fifth-year extension. AR 045.

          Col. Hisgen points to other evidence to support her position that there were "substantial factual bases," aside from the e-mail, "to change her endorsement [of LTC MF's extension request] to one of disapproval." Pl. Reply at 6-7. However, the evidence she cites relates to the e-mail in some way. For example, Col. Hisgen points to the oral and written reports by SGM VJ discussing the "tumultuous relationship" between 311th ESC and 79th SSC IG offices. AR 044, 061-62. These reports included a copy of the e-mail and discussed LTC

MF's allegations about CPT TC.  *See* AR 108-09, 143.  CPT TC's IG complaint against LTC

MF, also cited by Col. Hisgen, is related to the e-mail.  That complaint states that "[i]t has

become abundantly clear that [LTC MF] has a strong, personal bias against me, so far as to lodge

false, frivolous claims of professional misconduct through the 79th SSC SJA [(Staff Judge

Advocate)]." AR 122.

   Col. Hisgen relies, in part, on the fact that COL RJ concurred with her decision to

deny LTC MF's fifth-year extension request.  *See* AR 003-039.  The Court fails to see the

materiality of this evidence in that Col. Hisgen had already executed the memorandum denying

LTC MF's extension prior to soliciting COL RJ's opinion on August 2, 2012.  Therefore, COL

RJ's opinion, even if it confirmed her decision, could not have influenced it.  Moreover, when

Col. Hisgen contacted COL RJ to solicit his opinion, she attached a copy of the e-mail and the

memorandum for CPT TC's preliminary screening inquiry, which were the focal point of Col.

Hisgen's exchange with COL RJ.

   ABCMR considered Col. Hisgen's evidence and rejected her arguments.  Col.

Hisgen's emphasis on allegations concerning LTC MF's inappropriate behavior and

unprofessional conduct does not undermine the Army IG's findings or ABCMR's conclusion

that she would not have denied him a fifth-year extension absent the protected communication.

Her contemporary statements that the e-mail was the reason that "led [her] to recommend

disapproval" are fatal to her current arguments.  AR 151.  ABCMR's conclusion that Col. Hisgen

retaliated against LTC MF because of the e-mail was both reasonable and supported by

substantial evidence.

### C. ABCMR's Independent Analysis and its Statutory Mandate

Further, Col. Hisgen argues that "ABCMR rubber-stamped the IG's conclusions without any independent analysis, in violation of its statutory mandate." Pl. Mot. at 17. Col. Hisgen relies on the following paragraph from ABCMR's Decision in support:

> 19. The key issue here is not whether the IG investigation was flawed or whether the substantiated finding was supported by the evidence. The key issue is that IG records, including the applicant's [Report of Investigative Inquiry] ROII and allied documents, are properly filed. The purpose of maintaining IG records is to protect the interests of the Army and the Soldier. In this regard, the IG database maintains an unbroken historical record of IG functions and activities as they relate to Soldiers, including records of inspections, assistance, investigations, and teaching and training.

AR 045. Col. Hisgen contends that ABCMR was required by statute, 10 U.S.C. § 1552, to determine whether the IG's conclusions were flawed or unsupported by the evidence and not just whether the record was properly filed. While Col. Hisgen correctly describes ABCMR's statutory duty, she has failed to show that ABCMR violated its mandate.

Quoting poorly articulated passages from an agency decision is insufficient to demonstrate that the agency's action violated the APA, particularly when the passage is cited in isolation without consideration of the full record. ABCMR stated:

> 17. Neither the evidence of record nor the applicant's provided evidence substantiates her, and her counsel's, contention that there was an improper application of the law and governing regulation in reaching the substantiated finding in the first place. The evidence she provides does not lead to a different conclusion. Nothing she or her counsel provides shows the IG investigation was inadequate or tainted by the lack of evidence or thoroughness, failure to pursue logical investigative leads, and/or conclusions that were open to challenge based on the evidence provided.
>
> 18. The ABCMR is not an investigative agency. Likewise, the ABCMR does not normally reexamine issues of guilt or innocence

20

under UCMJ or issues whether an investigation was substantiated or unsubstantiated by an investigator, such as an IG. This is the commander's or directing authority's function and it will not be upset by the ABCMR unless the determination is clearly unsupported by the evidence. Here, the applicant was fully aware and was informed of the IG investigation, was afforded the opportunity to submit supporting documentary evidence, and was afforded the opportunity to testify. She was also afforded the opportunity to appeal the [Army] IG's finding through the proper channels. She appealed the finding but her appeal was denied.

. . .

20. There is no documentary evidence that states the applicant was removed from her duties as the [Command] IG [of the Army Reserve Command], even though that appears to have been the case. Likewise, there is no evidence of any derogatory information related to this investigation or any IG investigation in her OMPF [(official military personnel file)].

21. A record of the [Army] IG ROII for the complaint filed against her exists in the [Army] IG database; however, neither she nor her counsel has demonstrated the ROII is unjust or untrue, is in error, that it should be removed from the IG database, or that removal would be in the best interest of the Army. Therefore, she is not entitled to relief in this case.

AR 045. These statements, part of a fuller decision, demonstrate that ABCMR satisfied its

statutory duty. It considered the Army IG's findings, as well as Col. Hisgen's evidence and

arguments, and concluded that Col. Hisgen failed to "demonstrate the existence of a probable

error or injustice" that would warrant correction of the Army records. AR 046. Col. Hisgen has

not produced any evidence that would warrant a reversal of the agency's decision.

Moreover, after finding that Col. Hisgen had reprised against LTC MF, *see* AR

044-46, ABCMR also considered different bases for the relief sought — namely, the existence of

any procedural errors during or after the investigation. ABCMR ultimately concluded that the

Army's discretionary decisions were not "clearly unsupported by evidence," and should be left

undisturbed. *See* AR 045. Similarly, it did not find any procedural errors warranting reversal in favor of Col. Hisgen. *See id.* Accordingly, ABCMR's Decision was not arbitrary, capricious, or contrary to law.

## IV.  CONCLUSION

ABCMR's decision that LTC MF's e-mail was a protected communication made to the chain of command and that, absent the e-mail, Col. Hisgen would not have denied LTC MF's extension request was both reasonable and supported by substantial evidence. ABCMR satisfied its statutory mandate when it considered and rejected Col. Hisgen's arguments and when it also considered and rejected the existence of any procedural errors warranting reversal.

For the foregoing reasons, the Court will grant Defendant's Motion for Summary Judgment [Dkt. 12] and deny Col. Hisgen's Cross Motion for Summary Judgment [Dkt. 16].

A memorializing Order accompanies this Opinion.

Date: September 20, 2016

/s/

ROSEMARY M. COLLYER
United States District Judge